(34 Misc. Rep. 734.)

### CANNON v. JAMES M. BELL CO.

### SAME v. NEW YORK & COMMERCIAL STEAM LAUNDRY CO.

(Supreme Court, Special Term, New York County. May, 1901.)

BANKRUPTCY—PREFERENCES.

    Certain creditors of the proprietors of a hotel were put in possession of facts by the steward of the hotel showing the insolvency of such proprietors, and procured from them checks for the amount of their debts, knowing at the time that the person holding a chattel mortgage on the entire contents of the hotel was pressing for payment. The checks were immediately certified. Thereafter, on the same day, and within a few hours, the proprietors executed a general assignment for the benefit of creditors, and several creditors issued attachments. *Held*, in an action by the trustee of the proprietors, thereafter declared bankrupts, that such checks were preferences, within Bankr. Act 1898, § 60, subds. a, b, and voidable.

Actions by Charles M. Cannon, trustee in bankruptcy, against the James M. Bell Company, and against the New York & Commercial Steam Laundry Company. Judgments for plaintiff.

Julius Offenbach, for plaintiff.

McCurdy & Yard, for defendants.

LAWRENCE, J. These actions are brought by the plaintiff, as trustee in bankruptcy for the firm of Purdy & Wyatt, to recover of the respective defendants payments made to them in alleged violation of the provisions of the act of congress entitled the "Bankruptcy Act," and particularly of section 60 of the act, subdivisions "a" and "b." The payments particularly complained of against the defendant the Bell Company were as follows: On November 28th, $688.61, and on the same day, $755.20, and merchandise received by said company in alleged violation of such provisions on the 27th day of November, of the value of $99.73, making a total of $1,543.54, with interest. The claim against the laundry company was based upon a payment received by it on the 27th day of November, 1899, amounting to $164.35. It was agreed that both the actions should be tried together, and it was stipulated that the evidence, so far as applicable, should be considered in both cases. The bankruptcy act provides as follows:

"Sec. 60 (a). A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of the said creditors of the same class. (b) If a bankrupt shall have given a preference within four months before the filing of a petition or after the filing of the petition and before the adjudication, and the person receiving it or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

· The firm of Purdy & Wyatt were the proprietors and managers of a certain hotel and café known as the "Hotel Metropole," in the city of New York, and were adjudicated to be bankrupts by the district court of the United States for the Southern district of New York on the 3d of January, 1900, and on or about the 14th of February, 1900, the plaintiff in this action was appointed trustee in bankruptcy of the said co-partnership. The petition to have said firm and the members thereof adjudicated bankrupts was filed in said court on or about the 7th day of November, 1899. It will be perceived that the payment in each of the cases was made within four months before the adjudication in bankruptcy, and, if the plaintiffs are right in their contention, they fall within the prohibition contained in the statute. There can be no dispute on the evidence that the bankrupts were indebted to the firm of James M. Bell & Co. and to the laundry company in the amounts which were paid to them, and the question arises whether these creditors had reasonable cause to believe that the bankrupts intended by making same to give a preference to the defendant over the other creditors of the co-partnership. It has been held that whether or not there

70 N.Y.S.—65

was reasonable cause to believe that a preference was intended may be inferred from all the facts and circumstances of the case, but that determination must be something more than a guess, and the transferee must have had more than reasonable cause to suspect. See Coll. Bankr. 344, 345, and cases cited. I think a reading of the evidence in this case leads to the conclusion that the defendant had reasonable cause to believe that the payments were intended to give a preference to the defendant in this action over and above the other creditors of the firm of Purdy & Wyatt. It appears from the evidence that on the 1st of November, 1899, the liabilities of the firm were as follows: Forty thousand dollars to Huber, secured by a chattel mortgage of the entire contents of the hotel, except stock in trade; $11,000 to Huber, on notes not secured; $7,000, due October 1st, payment extended to November 1, 1899; and $18,000, merchandise liabilities,—making a total of $76,000. There were assets in the bank amounting to $3,000 and some stock. On the 25th of November, or thereabouts, Wyatt & Purdy joined in the execution to Huber, in satisfaction of the chattel mortgage, of a bill of sale of all they had except the money in the bank and a small stock in trade. It is shown by the evidence that Huber had been pressing for his money for several weeks before, and that Purdy & Wyatt knew that they would have to execute the bill of sale at least a day or two before the 25th of November. About the 25th of November, Mr. Lamb, who had formerly been a partner of Purdy's, and who was the steward of the hotel, and who made all the purchases from the defendant Bell & Co., went to Bell's office, and told him that Huber was pressing them for payment, and they were about to sell out. Thereupon Bell sent word to Purdy, and got the check, dated November 24th, for $688.61, for the amount of the September account due to Bell & Co. from the firm. This check was received by Bell on the 25th by mail, and not deposited, after the conversation with Lamb, in which Lamb stated that the "boys were in trouble, that Huber was pressing them for payment, and they were about to sell out." On Monday, the 27th, Bell called at the hotel, and demanded payment of Purdy of the October account, amounting to $395.85, and also demanded payment of the November account, amounting to $383.54, a total of $755.20. It appears from the evidence that the customary credit allowed to the bankrupts had been 45 days. The same day he got Lamb, the steward, to deliver him merchandise of the value of $99.73, which had been sold and delivered to Purdy & Wyatt a few days before, which had been charged against their account, and paid for by the two checks. These two checks, together with the value of the merchandise, overpaid the account by $75.54. On the morning of November 28th, as soon as the bank upon which the checks were drawn was opened, the defendant the Bell Company, under instructions given by its president, the witness James M. Bell, to whom the information regarding the financial troubles the bankrupts were in had been given on Saturday, the 25th, had the two checks certified, and withdrew from the assets of the firm $1,443.81 on November 28, 1898. Thereafter, and on

the same day, and within a few hours, the bankrupts executed a general assignment for the benefit of creditors, and on the same day several of the creditors of the bankrupts issued attachments. I think it clear from the evidence that the Bell Company were put in possession of sufficient facts by Lamb, the steward of the bankrupts, to induce them to believe that a preference of their debt was intended, and that that inference is fairly deducible from all the facts and circumstances disclosed on the trial. It therefore results that the cause of action stated in the complaint against the defendant Bell & Co. has been made out. In regard to the laundry company, it appears that Wyatt, one of the bankrupts, was its secretary, and conducted the transactions between it and the bankrupts, and made the collections, and that he had actual knowledge that the firm was unable to go on for a week or ten days before a bill of sale was executed to Huber, and that thereupon he induced his partner to sign a check for the sum of $164.56 in favor of the company. The knowledge of Wyatt was the knowledge of the laundry company, and I understand that the learned counsel for the defendants in his brief concedes that the cause of action stated in the complaint in respect to the transactions between the laundry company and the bankrupts has been made out. I am therefore of the opinion that judgment should be rendered in favor of the plaintiff against the Bell Company in the sum of $1,543.54, with interest from November 28, 1899, and against the laundry company in the sum of $164.56, with interest from the 27th day of November, 1899. Draw judgments accordingly, and settle on two days' notice.

Ordered accordingly.